FILED

2016 Jan-06  AM 10:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION

| | | |
|---|---|---|
| FRED WRIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:15-CV-1310-TMP |
| | ) | |
| DIRECTV, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

This matter is before the court on a motion to dismiss, or in the alternative, to compel arbitration filed by defendant DirecTV, LLC, ("DirecTV"), on August 4, 2015.  (Doc. 2).  By order dated September 8, 2015, the court explained that, because the motion is supported by exhibits (including an affidavit and copies of customer agreements, which the defendant asserts constitute contracts in which the plaintiff agreed to arbitrate his claims), the motion must be converted to a motion for summary judgment brought pursuant to Federal Rule of Civil Procedure 56.  (Doc. 16).  The same order explained to the plaintiff, Fred Wright, who is appearing *pro se*, the rules governing summary disposition.  The motion has been fully briefed.

(Docs. 19, 20).   The parties have consented to the jurisdiction of the undersigned magistrate judge.

## SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim."  Id. at 323.

Once the moving party has met his burden, Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'"   Id. at 324 (quoting former Fed. R. Civ. P. 56(e)).   The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings.   Celotex, 477 U.S. at 324.   "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."   Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a).   The substantive law will identify which facts are material and which are irrelevant.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).   A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   Id. at 248.   "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a

genuine issue for trial." Id. at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. Anderson, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every

reasonable inference.   Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).


## FACTS

For purposes of summary judgment, the following facts, construed in the light most favorable to the plaintiff, are viewed as true:

Plaintiff seeks damages and injunctive relief for his claims that the defendant, DirecTV, violated the federal Telephone Consumer Protection Act and Alabama Code Sections 8-19C-2(a) and 8-19C-7 when a telemarketing agent called Wright's cell phone on seven occasions, attempting to sell him premium channels to add to his subscription to defendant's satellite television service.   Wright was at all times relevant to the claims a DirecTV subscriber, and the cell phone was the phone number he had given DirecTV as his contact number when he subscribed to its service.

Wright asserts that telemarketers for DirecTV called his cell phone seven times between October 3, 2014, and May 15, 2015.   When Wright received the first call, an agent attempted to sell him a premium channel subscription, and Wright asked not to be called again.   (Amended Complaint, Doc. 12, paragraph 21).   A similar call was placed to his cell phone on November 19, 2014, and Wright again

requested that he not be called again and told the agent that continued calls would violate the Telephone Consumer Protection Act.   (Doc. 12, paragraph 22).   A third call went unanswered, and the fourth call, on January 23, 2015, was another attempt to sell a premium channel.   Wright again told DirecTV to stop calling his cell phone.   (Doc. 12, paragraphs 23-24).   Wright did not answer a fifth call, placed on April 9, 2015, but did answer a sixth call on April 10, 2015, in which the agent attempted to sell a premium channel subscription to Wright, and Wright again told the agent to stop calling his cell phone. (Doc. 12, paragraphs 25-26).   The final call came on May 15, 2015, when Wright was connected to the agent only after a lengthy delay, and the agent explained that the call had been placed by an automatic dialing system.   Wright again asked for the calls to stop.   (Doc. 12, paragraph 27).   In each of the calls, the agent failed to identify himself or herself by stating his or her name or by identifying the company he or she represented within the first 30 seconds of the calls.   (Doc. 12, paragraphs 20-27).

As a DirecTV customer, Wright was provided with DirecTV's "Customer Agreement" when he enrolled for DirecTV service in 2004, and again each time the agreement was updated.   (Doc. 2, Exh. 1, Affi. of Walters).   Each agreement contained a provision regarding arbitration of disputes related to the consumer's contract with DirecTV.   Wright was instructed that, if he did not agree to any terms

in the agreement, he should cancel his agreement with DirecTV.   The Agreement

states:

> THIS DOCUMENT DESCRIBES THE TERMS AND CONDITIONS
> OF YOUR RECEIPT AND PAYMENT OF DIRECTV® SERVICE
> AND IS SUBJECT TO ARBITRATION (SECTION 9) AND
> DISCLAIMER OF WARRANTIES (SECTION 8).   IF YOU DO
> NOT ACCEPT THESE TERMS, PLEASE NOTIFY US
> IMMEDIATELY AND WE WILL CANCEL YOUR SERVICE.   IF
> YOU INSTEAD DECIDE TO RECEIVE OUR SERVICE, IT WILL
> MEAN THAT YOU ACCEPT THESE TERMS AND THEY WILL
> BE LEGALLY BINDING. ...

(Doc. 2, p. 39 (Exh. C to Exh. 1)).[1]   The Agreement also contains a provision

regarding the resolution of disputes.   (Doc. 2, p. 40).   The provision reads in

pertinent part as follows:

---

[1]   The Agreement is dated April 4, 2010.   Similar language appears in the Customer
Agreements dated September 1, 2001 (Exh. A), October 1, 2004 (Exh. B), and June 24,
2015.   (Exh. D).   It is the one quoted above, however, that appears to have been in effect
at the time that the phone calls made the basis of the complaint were received.

In order to expedite and control the cost of any dispute, you and we agree that any legal or equitable claim relating to this Agreement, any addendum, or your Service (referred to as a "Claim") will be resolved as follows:

(a)    <u>Informal Resolution.</u>    We will first try to resolve any Claim informally.    Accordingly, neither of us may start a formal proceeding (except for Claims described in Section 9(d) below) for at least 60 days after one of us notifies the other of a Claim in writing.    You will send your notice to the address on the first page of this Agreement, and we will send your notice to your billing address.

(b)    Formal Resolution.   Except as provided in Section 9(d), if we cannot resolve a Claim informally, any Claim either of us asserts will be resolved only by binding arbitration.   The arbitration will be conducted under the rules of JAMS that are in effect at the time the arbitration is initiated ... and under the rules set forth in this Agreement. ... ARBITRATION MEANS THAT YOU WAIVE YOUR RIGHT TO A JURY TRIAL. ...

(Doc. 2, p. 40).

Wright does not dispute that he received the Agreements, nor does he dispute that claims relating to his DirecTV service are subject to arbitration as set forth in the Agreement.   He instead argues that the telemarketing phone calls at issue did not "relate to" his DirecTV service and were therefore outside the scope of the Agreement, including the agreement to arbitrate.   He further asserts that, if the calls fall within the scope of the Agreement, the Agreement is unconscionable and therefore unenforceable.

Having examined the arguments of both parties, the court finds that, because Wright's claims do relate to his DirecTV service, the arbitration provision in the Agreement between Wright and DirecTV encompasses those claims.  The court further finds that the plaintiff has not demonstrated that the Agreement is unconscionable.   Accordingly, the motion to compel arbitration is due to be granted.

## DISCUSSION

DirecTV moves to dismiss Wright's claims or, in the alternative, to compel Wright to submit his claims to arbitration.   Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* (1988), a party to a written agreement that involves interstate commerce[2] and contains an arbitration clause has a right to petition a district court to issue an order compelling arbitration.   In Dunn Construction Co. v. Sugar Beach Condominium Association, the district court asserted that its "ultimate objective in reviewing a motion to compel arbitration is to ascertain if an arbitrable dispute exists between individuals or entities who may be compelled to arbitrate.   If

---

[2]      The parties in the instant case do not dispute that the contract at issue involves interstate commerce, and the court likewise finds that the interstate commerce requirement of the arbitration provision is met.  See Jenkins v. First American Cash Advance of Georgia, LLC, 400 F.3d 868, 874-75 (11th Cir. 2005).

arbitration is appropriate, it then is the arbitrator's responsibility to resolve the merits of the parties' contentions."   760 F. Supp. 1479, 1482 (S.D. Ala. 1991).

There is a strong national policy favoring arbitration of disputes.   Southland Corp. v. Keating, 465 U.S. 1, 10, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984) (finding that "all doubts concerning the arbitrability of claims should be resolved in favor of arbitration"); see also   Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983).   The FAA provides, "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."   9 U.S.C. § 2.   Further, the United States Supreme Court has stated that the "primary purpose [of the FAA is to ensure that] private agreements to arbitrate are enforced according to their terms."   Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 479, 109 S. Ct. 1243, 103 L. Ed. 2d 488 (1989).   The FAA was intended to "reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts."   Jenkins v. First American Cash Advance of Ga., LLC, 400 F.3d 868, 874 (11th Cir. 2005) quoting

Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24, 11 S. Ct. 1647, 1651, 114 L. Ed. 2d 26 (1991).   Because a written agreement to arbitrate exists between DirecTV and Wright, there is a strong presumption that the motion to compel arbitration is due to be granted.

### A.   Scope of the Arbitration Agreement

The parties agree that the arbitration provision requires the parties to arbitrate any "claim relating to ... your Service."   Where the parties have agreed without dispute to arbitrate some of their claims and the issue is the scope of that arbitration clause, "doubts concerning the scope of arbitral issues should be resolved in favor of arbitration."   Granite Rock Co. v. International Brotherhood of Teamsters, 561 U.S. 287, 298, 130 S. Ct. 2847 (2010).   There exists a presumption of arbitrability "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."   AT&T Technologies, Inc., v. Communications Workers of Amer., 475 U.S. 643, 650, 106 S. Ct. 1415 (1986), quoting Warrior & Gulf Navigation Co., 363 U.S. 574, 582-583, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960).

Arbitration clauses often refer to claims "relating to" the contract, or claims "arising out of" the contract, and courts consistently have construed the term

"relating to" more broadly than the term "arising out of."   See, e.g., AT&T Technologies, 475 U.S. at 650; Ex parte Discount Foods, Inc., 789 So. 2d 842 (Ala. 2001).   Communications intended to market additional services to a current or former customer have been examined in a context similar to this case.   In a dispute regarding *marketing* texts sent by a bank to a former customer's cell phone, a district court within the Eleventh Circuit has determined that the customer's claims "relate to" the customer's service agreement provided to him when he opened an account with the bank.   The court further determined that the issue of the scope of the agreement is a matter for the arbitrator.   Shea v. BBVA Compass Bancshares, Inc., 2013 WL 869526 (S.D. Fla. March 7, 2013).[3]

The Agreement in the instant case employs the broad "relates to" language. It does not specifically define the term "Service," but does describe the term as referring to "digital satellite entertainment programming."   (Doc. 2, p. 22). Wright asserts that, because the Agreement also refers to the Service as something for which the customer must pay, the telemarketing calls, for which Wright did not

---

[3]   In Shea, the court found that the parties, by incorporating the rules of the AAA and JAMS into the arbitration provision, also had included a "delegation clause" that reserved questions regarding the scope of the arbitration to the arbitrator.   The parties in this case also incorporate the rules of JAMS.   To the extent that the incorporation of the JAMS rules constitutes a delegation clause, the court finds that the issue of the scope of the clause is due to be determined in arbitration.   To the extent that the court must decide that issue as a gateway question, the court finds that the marketing calls do relate to the DirecTV service provided to Wright.

agree to pay and for which he was never billed, fall outside the definition of "Service."

The issue here is simply whether seven calls made to Wright's phone, during which DirecTV telemarketers attempted to persuade Wright to upgrade his programming to include premium channels, could be construed as "relating to" the "digital satellite entertainment programming" Service provided by DirecTV to the plaintiff.  The court finds that a marketing call to an existing customer about "add-ons" to the service already purchased must logically be deemed to relate to the existing service.  Certainly, at the very least it cannot "be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."

Even though the "related to" language is not without limits, it still is far-reaching enough to encompass claims that are not "incidental" to, and that are "connected with" the agreement.   Doe v. Princess Cruise Lines, Ltd., 657 F.3d 1204 (11th Cir. 2011).   Accordingly, because the parties agree that an arbitration agreement exists between them, the scope of that agreement must be determined by the arbitrator.   Moreover, to the extent that the court must decide whether the clause is susceptible to an interpretation that includes the dispute over the marketing calls, the court decides that the language of the arbitration agreement is sufficiently broad

to include Wright's claims.   Finally, the motion to compel arbitration also is due to be granted because the parties have included a delegation clause that gives the arbitrator the power to decide the scope of the "related to" language in the arbitration provision.

## B.   Unconscionability

The plaintiff also argues that the contract containing the arbitration clause is unconscionable under Alabama law. [4]   Specifically, Wright argues that the Agreement is defective because: (1) Wright could not obtain the product from another vendor without agreeing to an arbitration provision, (2) the provision is unreasonably broad, and (3) the terms of the provision are unreasonably harsh to the plaintiff.   (Doc. 20, pp. 20-23).   As the party seeking to invalidate the arbitration agreement, the plaintiff bears the burden of showing that the contract is unenforceable.   Bess v. Check Express, 294 F.3d 1298 (11th Cir. 2002).

---

[4]   Because the contracts provided by the defendant contain a choice-of-law provision (doc. 2, pp. 28, 37, 52) selecting the law of the state in which the service is provided to the consumer, it would appear that the court should apply Alabama law.   The choice-of-law provision for the contract in effect in 2014 appears to have been omitted from the exhibits, but is contained and unchanged in the other three contracts.   Neither party has offered any justification for the application of any other state law or contended that Alabama law does not apply.

Under Alabama law, an unconscionable contract is defined as one which "no man in his sense and not under delusion would make on the one hand," and "no honest and fair man would accept on the other."   Sears Termite & Pest Control, Inc. v. Robinson, 2003 WL 21205646 at *5 (Ala. May 23, 2003).   Generally, a court determining whether a contract is unconscionable should look for terms that are "grossly favorable" to one party that has "overwhelming bargaining power." Leonard v. Terminix Int'l Co., 854 So. 2d 529, 538 (Ala. 2002).   "[U]nder Alabama case law, 'unconscionability includes an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to the other party."   Roberson v. Money Tree of Alabama, Inc., 954 F. Supp. 1519, 1525 (M.D. Ala. 1997), quoting West Point–Pepperell, Inc. v. Bradshaw, 377 F.Supp. 154 (M.D.Ala. 1974).

The Alabama Supreme Court has examined the applicability of an arbitration provision in a contract of adhesion.[5]   American General Finance, Inc., v. Branch, 793 So. 2d 738 (Ala. 2000).   The court stated that a plaintiff seeking to avoid

---

[5]   Courts have rejected the notion that an arbitration clause is "automatically invalid" if contained in a contract of adhesion.   See Rollins, Inc., v. Foster, 991 F. Supp. 1426, 1435 (M.D. Ala. 1998), and cases cited therein.   A "contract of adhesion" is nothing more than a contract in which one of the contracting parties has little or no say in the form of or words used in the contract, such as where a standard or printed form contract is used.   Most, if not all, contracts offered to consumers in financial and business transactions are contracts of adhesion.

arbitration must demonstrate that he had no meaningful choice in making the contract, and that the terms are unreasonably favorable to the other party.   Branch, 793 So. 2d at 748.   A consumer can show that he had no meaningful choice regarding entering into the contract where the market is so permeated with companies requiring consumers to agree to arbitration that it would be very difficult for the consumer to find a way to obtain the service without agreeing to an arbitration provision.   Id.

While Wright argues that he could not receive DirecTV's exclusive "NFL Sunday Ticket" service from another provider, he does not demonstrate that other satellite or cable TV providers did not offer substantially similar services for television and sports channels without requiring consumers to agree to arbitrate their disputes.   More importantly, Wright's focus on the "NFL Sunday Ticket" as the Service improperly narrows the contract's definition of the "Service" offered.   The Agreement containing the arbitration clause defined "the Service" as "digital satellite entertainment programming," not simply the "NFL Sunday Ticket."   While the "NFL Sunday Ticket" may have been an exclusive product of DirecTV, it is undisputed that "digital satellite entertainment programming" is offered by other companies in competition with DirecTV.   Plaintiff had meaningful choices

concerning who would supply him with satellite TV, and, thus, the Agreement was no unconscionable.

The Alabama Supreme Court also has explained that "grossly favorable" terms may exist where the powerful party constructs a clause so broad that it includes any cause of action "that could conceivably arise in favor" of the plaintiff, but allows the defendant to employ the courts to pursue its claims against the plaintiff.  American General Finance, Inc., v. Branch, 793 So. 2d 738, 748-49. Similarly, a provision that caps the amount a plaintiff could recover from an arbitrator, but allows the company that drafted the clause to pursue more expansive remedies available in court, could be deemed unconscionable.   793 So. 2d at 749.

In demonstrating that a contract is unconscionable, the plaintiff must show not only some abstract unfairness in the bargain, but must show "actual circumstances of the case" that are grossly unfair.   Such circumstances might involve demonstrating that he cannot obtain the same relief through arbitration that would be available in court, or that he could not afford to engage in the arbitration because of the higher cost.  Rollins, 991 F. Supp. 2d at 1438.

In this case, the plaintiff has not demonstrated that DirecTV has "overwhelming bargaining power," or that the arbitration provision is one that no reasonable person would enter.  He simply argues that he wanted to obtain the

"NFL Sunday Ticket" package, which is exclusively available through DirecTV. To follow plaintiff's logic to its inevitable end, any arbitration provision could be invalidated simply by showing that some part of a service offered by the provider was unique.  There has been no evidence offered to show that Wright could not have obtained a variety of channels, including sports offerings, through cable or other satellite companies without submitting to an arbitration provision.

Furthermore, as the defendant points out, the arbitration provision at issue here contains terms that are favorable to the consumer, including shifting the costs to DirecTV, limiting the costs of initiating an action to $125 or less if the state-court filing fee would be less, and allowing for arbitration in the area where the plaintiff receives his DirecTV service.  While DirecTV reserves the right to prosecute theft of services in court, the provision also allows the consumer to pursue matters in small claims court in lieu of arbitration.  As for the cost of arbitration, the Agreement sets an amount of $125 for the initiation of the action.  Plaintiff obviously was able to pay this court's filing fee of $400, which is more than three times the cost of initiating the arbitration.

Finally, Alabama law recognizes that whether a contract is unconscionable is usually a question for the factfinder, thus making that very question one for the arbitrator.  "[I]t would be difficult for a court to decide this issue 'as a matter of

law' because 'Alabama law provides no implicit standard of unconscionability.' Each case must be decided on its own facts." <u>Roberson v. Money Tree of Alabama, Inc.</u>, 954 F. Supp. 1519, 1524-25 (M.D. Ala. 1997), quoting <u>E & W Bldg. Material v. American Sav. & Loan Ass'n</u>, 648 F.Supp. 289, 290 (M.D.Ala.1986).   Because the alleged unconscionability of a contract must be "decided on its own facts," that question is fact intensive and delegated to the arbitrator to determine.

Accordingly, the plaintiff has failed to demonstrate that the arbitration provision is unenforceable because it is unconscionable under Alabama law.

## **CONCLUSION**

Based upon the foregoing undisputed facts and legal conclusions, the motion to dismiss or, in the alternative, to compel arbitration is due to be GRANTED.   By separate order, the plaintiff will be DIRECTED, if he wishes to pursue these claims, to initiate arbitration in compliance with the Agreement.   The claims before this court therefore will be DISMISSED.

DATED this 6th day of January, 2016.

T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE